**James D. KIRKLAND, Plaintiff,**

v.

**UNION PACIFIC RAILROAD, Defendant.**

**No. CV–S–99–319–JBR–(RLH).**

United States District Court,
D. Nevada.

Dec. 9, 1999.

Victor L. Russo, R. Edward Pfiester, Jr., Los Angeles, CA, Lacie L. Bowers, Las Vegas, NV, for plaintiff.

Christopher J. Raleigh, Anastasia Noe, Raleigh, Hunt & McGarry, Las Vegas, NV, for defendant.

## ORDER

HUNT, United States Magistrate Judge.

Submitted to this Court for decision is **Defendant's Motion to Strike Plaintiff's Experts & Motion for Sanctions as a Result of Events Surrounding the Scheduled Deposition of Dr. Becker** (# 23, filed October 27, 1999). Plaintiff's Opposition ... includes a **Request for Sanctions Against Counsel for Defendant** (# 27, filed November 12, 1999). Defendant's Reply to Plaintiff's Opposition ..., and Opposition to Plaintiff's Request for Sanctions (# 31) was filed November 24, 1999.

## BACKGROUND

Plaintiff served PLAINTIFF'S DISCLOSURE OF EXPERT WITNESSES by mail on August 13, 1999, the deadline established by the scheduling order entered by the Court (# 10) on June 24, 1999. It identified two doctors and a number of co-workers or other of Defendant's employees as follows:

Dr. Steven Becker was identified as a physician expected to testify concerning all aspects of Plaintiff's damages, including his examination of Plaintiff and the nature and extent of Plaintiff's injuries, diagnosis, prognosis, and residual restrictions. It also noted that his "report will be forwarded upon receipt."

Dr. Neil Goodsell was also identified as a physician whose testimony description mirrored that of Dr. Becker, except for the representation that all of Dr. Goodsell's rec-

ords had been previously obtained by Defendants.

Plaintiff has affirmatively asserted that both doctors are treating physicians. Dr. Goodsell treated Plaintiff for his burn injuries and Dr. Becker for his hearing loss.

Plaintiff also listed a group identified as "Plaintiff's Co–Workers" (W.C. Wilson, Jr., L.R. Rhodes, Will Thurman and Doug Fransen), indicating they have knowledge of the accident and the Defendant's post-incident investigation. Plaintiff indicated that he would not call all these witnesses, but that of those called, he intends to elicit expert opinion testimony from them regarding the cause of the incident and defendant's liability therefore.

Finally, Plaintiff listed "Union Officials" (L.R. Tyler, K.H. Mohler, Allen J. Riley and N. Dipaccio) who Plaintiff also describes as Defendant's employees. Plaintiff indicated that not all of these witnesses would be called either. However, one or more of them would be expected to testify regarding the incident and situation faced by Plaintiff at the time, work procedures and job duties, job opportunities which existed before and after the accident, wages and fringe benefits, and economic losses that Plaintiff faces.

As to these last two groups, Plaintiff indicated that, because they are Defendant's employees, they have not been "retained" as experts, but Plaintiff expects them to have certain expertise or "quasi-expertise" which he hopes to elicit from them should they be called to testify. They were identified as experts for that reason.

Defendant moves to strike all the above because no reports were submitted as to any of these witnesses. Its arguments consist primarily of the following: The Disclosure does not identify the doctors as "treating physicians." Defendant does not contend that it did not know they were treating physicians, however. There is no evidence that Defendant was mislead, rather, only a claim that the form of the Disclosure was inadequate because it did not use the words, "a treating physician." Further, the disclosure regarding Dr. Becker states that his "report will be forwarded upon receipt." This, Defendant contends, shows that he was retained to provide expert testimony, otherwise why would Plaintiff expect a report? To this, the Court notes that Plaintiff explains that Dr. Becker had not prepared a report and they could not afford to ask that he do so, but that if he did, they would provide it to Defendant. While the meaning of the promise to forward any forthcoming report to Defendant may be understood several ways, there is no evidence to support Defendant's contention that the only reasonable interpretation is that the doctor was retained to provide expert testimony (rather than merely as a treating physician.).

Defendant further claims that the words "all aspects" which describe the anticipated testimony, means the doctors will testify to matters beyond that personally observed during "treatment." Such a reading takes the interpretation far beyond the reasonable reading of the scope of the testimony, within the context of the disclosure language.

Regarding the co-workers or other employees of Defendant, Defendant contends that if they are to testify as experts, Plaintiff must comply with the disclosure requirements of Rule 26(a), Fed.R.Civ.P. Plaintiff responds by reminding Defendant that they are Defendant's employees; employment obligations preclude them from talking to Plaintiff or Plaintiff's counsel about the circumstances at issue; Plaintiff cannot require them to provide a report or the other information mandated by Rule 26(a); they may fear cooperating with Plaintiff; and, because they are Defendant's employees, Defendant has the right and opportunity to interview them to determine what their testimony will be, or can take their depositions.

By way of trying to convince the Court of Defendant's lack of good faith in this matter, Plaintiff notes that Defendant's counsel never made any attempt to resolve these issues before bringing the matter before the Court. Also, Defendant, itself, has failed to provide Plaintiff with a single expert witness report, including the report of an independent medical examination of Plaintiff.

There is a second incident at issue here. It involves the abortive efforts to take the deposition of Dr. Becker. Both counsel ac-

cuses the other of inappropriate conduct and being the cause of the cancellation of the deposition. Each seeks sanctions for the other's conduct.

The deposition was originally set for September 9, 1999, but the doctor was unavailable, so it was reset for October 7, 1999, at 3:00 p.m. At Dr. Becker's request, due to a heavy patient schedule, the deposition was rescheduled for 4:00 p.m. Defendant's counsel arrived at 3:50 p.m. Plaintiff's counsel contends he arrived in time for a short conference with the doctor prior to the deposition, but was not called into Dr. Becker's office until approximately 4:05 p.m. This time conforms with Defendant's counsel's recitation. Plaintiff's counsel represented that it would only take five minutes. However, unbeknown to Defendant's counsel, the doctor had not actually arrived, but was en route when Plaintiff's counsel was called into the doctor's inner office. Accordingly, at about 4:10 p.m., when the nurse stepped out to tell Defendant's counsel that it would be another fifteen or twenty minutes, Defendant's counsel assumed that Plaintiff's counsel and the doctor were extending their conference and that Defendant would have to pay for this extra time spent by the doctor.

According to Defendant's counsel, he voiced his objections to the delay and adamantly refused to pay for the extra time, complaining that the deposition had been delayed. When his objections were relayed to the doctor, the doctor, leaving Plaintiff's counsel in his inner office, went into the waiting room to confront Defendant's counsel. The doctor claims that Defendant's counsel threatened to set up for the deposition in the waiting room, filled with sick patients, and that counsel's behavior was disruptive, inappropriate, and upsetting to his patients. He directed Defendant's counsel to leave his waiting room. Counsel did so, going into the hallway and setting up the court reporter's machinery. He then made a record of the events and his objections. Counsel for Plaintiff was also permitted to speak on the record.

The result was that the deposition did not go forward.

Additionally, Defendant's counsel objected to the presence of Plaintiff's counsel, Edward Pfiester, who had not, at that time, filed a Verified Petition to Practice in this case. He has since done so, and the petition was accepted.

Had Defendant's counsel exercised a little more patience and professional courtesy, he might not have been denied the deposition. As it was, the Court finds that he overreacted and his conduct was unprofessional.

However, it appears that the doctor may also have overreacted in ejecting counsel from his office. The Court recognizes that the doctor undoubtedly felt pressured by a heavy patient calendar and serious obligations, combined with a feeling that he was trying to accommodate counsel despite the time and professional pressures under which he was operating. It is understandable that his patience and temper might have been strained. The severity of his actions, however, does not appear to have been justified. A simple explanation and request for patience and respect for his patients might well have sufficed. However, it is not against the doctor that sanctions are requested. It is against Plaintiff's counsel. However, Plaintiff's counsel remained in the inner office and was not part of the altercation. Furthermore, he had no control over when the doctor arrived. He did not know the doctor was not waiting in his inner office when counsel was called in. Otherwise, he would not have promised that it would only be five minutes.

The Court also understands the frustration of Defendant's counsel's assumption that he was being asked to cool his heels in the waiting room while Plaintiff's counsel and the doctor were conducting a one-half hour conference that Defendant would likely be billed for. Understanding the frustration is not the same as understanding the nature and extent of the reaction. Counsel could merely have put on the record his objections and refusal to pay for the time spent in conference, and the deposition would have proceeded.

## DISCUSSION

### I. Treating Physicians

Rule 26(a)(2), Fed.R.Civ.P., governs the expert disclosure requirements. Section (A)

requires the disclosure of the "identity" of any person who "may" be used at trial to present evidence pursuant to Rules 702, 703, or 705 of the Federal Rules of Evidence.

Section (B) requires more specific and detailed disclosures regarding witnesses "retained or specially employed to provide expert testimony. . . ." The description also includes an employee of the party proffering the expert, where the employee's duties regularly involve giving expert testimony. The employees in question here are neither proffered as experts by their employer, nor is there evidence that their duties regularly involve giving expert testimony. Accordingly, such employees are not at issue here.

The information, in addition to the "identity" of the expert, required pursuant to Rule 26(a)(2)(B), includes the following:

[A] written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

"A treating physician, . . . can be deposed or called to testify at trial without any requirement for a written report." Fed. R.Civ.P. 26(a), Advisory Committee Notes to 1993 Amendments. The exclusion of treating physicians from the disclosure requirements of Rule 26(a)(2)(B) has been honored by this Court, as well as others in this District (*Cf. Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 174–175 (D.Nev.1997); *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D.Nev. 1998)), and elsewhere (*Cf. Hall v. Sykes*, 164 F.R.D. 46, 48 (E.D.Va.1995); *Shapardon v. West Beach Estates*, 172 F.R.D. 415, 417 (D.Haw.1997)).

Drs. Becker and Goodsell are clearly treating physicians.

The Defendant urges the Court to limit treating physicians' testimony to only that information obtained during treatment, excluding information learned during examination or anything which goes beyond the treatment itself. Counsel cites *Piper* and *Elgas, supra*, for that proposition. Defendant's reliance on those cases is not well founded. As Judge McQuaid succinctly stated in *Piper*, at 175, "A treating physician's testimony, however, is based on the physician's personal knowledge of the examination, diagnosis, and treatment of a patient and not from information acquired from outside sources."

■ Furthermore, treating physicians can appropriately have opinions as to the cause of an injury, based upon their examination of the patient, or to the degree of injury, or the extent of disability, in the future. The prognosis of the patient and what tasks a patient will be able to perform are legitimate opinions which come within the parameters of opinions required to be made by treating physicians, without subjecting them to the requirements of Rule 26(a)(2)(B). *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D.Colo. 1995).

■ Defendant's lament, that the Disclosure says the doctors will address "all aspects" of Plaintiff's damages, and that means that the doctors will testify to matters beyond that reasonably associated with the examination and treatment. That fear is without basis. There is no evidence that Plaintiff intends to call the doctors to testify to anything more than what one would ordinarily expect treating physicians to testify.

The disclosure of the identities of Drs. Becker and Goodsell are sufficient under Rule 26(a)(2). The report required by subsection (B) is not required. Those experts will not be stricken for failure to provide such reports.

## II. Co-employee Experts

■ Plaintiff has done all that is necessary by identifying witnesses, who are co-employees, employed by Defendant, from whom he

may attempt to elicit Rule 702, 703 or 705 testimony.

. . . .

The named co-employees have neither been "retained [n]or specially employed" to provide the anticipated expert testimony. In fact, they have not been retained or employed at all. Plaintiff merely anticipates or suspects that they may have information upon which opinions have been formed, about which they may be qualified to testify. They have been paid no money. They certainly cannot be compelled by Plaintiff to prepare reports. In fact, they may face retaliation from their employer if they even speak to Plaintiff or his counsel about their testimony or a report.

This type of potential expert witness is precisely what 26(a)(2)(A) is designed to include, and 26(a)(2)(B) is designed to preclude. It puts Defendant on notice, but does not require of Plaintiff an impossible task. After all, they are Defendant's employees. There is nothing to preclude Defendant from interviewing them or taking their depositions, to discover what testimony they might provide, or opinions they might hold. Plaintiff does not have the right to talk to them or compel their cooperation. Taking all their depositions by Plaintiff may be financially prohibitive. Plaintiff has no reasonable way of obtaining the information required by 26(a)(2)(B), even if it exists.

Reports from the named co-employees are not required and they will not be stricken as potential expert witnesses. By so stating, the Court does not intent to preempt the requirement that any expert opinion testimony, from these witnesses, be preceded by the appropriate foundational questions to establish their expertise and the bases therefore.

### III. Sanctions

There is no evidence that any delay was caused by Plaintiff's counsel, Mr. Pfiester. Neither is there any evidence that Mr. Pfiester played any role in the doctor's ejection of Defendant's counsel nor the failure of deposition to proceed. Accordingly, the Court finds no basis for sanctions against either the Plaintiff or Plaintiff's counsel for the failure of the deposition to proceed.

It is true that at the time of the deposition and the filing of Defendant's motion, R. Edward Pfiester, out-of-state counsel for Plaintiff, had not filed a Verified Petition to Practice before this court in this case. It is also true that subsequent thereto, and before filing the Opposition and Request for Sanctions referred to above, such a petition was filed, and accepted by the Court.

Local Rule LR IA 10–2 requires out-of-state counsel to file such a petition, and subsection (g) of that rule authorizes the Court to impose sanctions. Sanctions are not mandatory, however, and the only one suggested is the striking of any documents filed by the attorney. In this case, Mr. Pfiester did not file any documents before his petition was granted. Furthermore, there is no evidence that his appearance prejudiced Defendant, or that his presence was even objected to, except as an afterthought to bolster this motion. Mr. Pfiester contends that his failure to file the verified petition earlier was an oversight. He thought it had been done, since another attorney with the firm, Victor Russo, had filed such a petition. He was made aware of it when Defendant threatened sanctions and immediately rectified the violation.

From the foregoing, it does not appear that sanctions are warranted and the Court will exercise the discretion permitted by the rule and decline to assess any.

The Court is also not inclined to sanction Mr. Raleigh, counsel for Defendant. Admittedly, his behavior was unprofessional and the result of impatience and possibly inappropriate conduct in the presence of the doctor's patients. Admittedly, Mr. Pfiester's trip to Las Vegas, from California, was for naught. However, Mr. Pfiester was not authorized to appear (and the rule forbids taking "any action") in the first place and cannot be heard to complain, in view of his own indiscretion. Furthermore, it is unclear whether it was the overreaction of Mr. Raleigh or the overreaction of the doctor that is the primary cause of the deposition not going forward. Lastly, if Defendant's counsel is at

fault, the Court finds the failure of his deposition proceeding is sanction enough and will leave the parties otherwise as the Court finds them.

Sanctions against either party will be denied.

## ORDER

Based upon the foregoing, it is HEREBY ORDERED that Defendant's Motion to Strike Plaintiff's Experts & Motion for Sanctions as a Result of Events Surrounding the Scheduled Deposition of Dr. Becker (# 23), as well as Plaintiff's Request for Sanctions Against Counsel for Defendant (# 27), are all DENIED.